Filed 3/18/20; Certified for publication 3/24/20 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | |
| | D076517 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4426) |
| v. | |
| M.J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge. Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

M.J. (Mother) appeals the order entered following the jurisdiction and disposition hearing in the juvenile dependency case of her minor child, D.S. Mother contends the court erred by not complying with the inquiry provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

"In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.) In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings.

In July 2019, the San Diego County Health and Human Services Agency (Agency) petitioned the juvenile court under Welfare and Institutions Code section 300, subdivision (f),[1] on behalf of 12-year-old D.S. D.S. was living with his paternal aunt (Aunt), later determined to be his presumed mother. The Agency alleged that D.S.'s father was deceased, Mother had previously caused the death of another minor, and Aunt was no longer able to care for D.S. As discussed in the detention report, Mother's parental rights were terminated after she was charged and convicted of killing D.S.'s brother. D.S. had been placed in the care of his father, who subsequently died suddenly in March 2018. Aunt assumed care for D.S., but reported to the Agency that she could not currently care for D.S. due to her own health issues.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

At the detention hearing, the court found the Agency had made a prima facie showing under section 300 and ordered that D.S. be detained in out-of-home care. Mother denied any Indian ancestry. Based on representations by Aunt that D.S.'s father may have Indian heritage, however, the court found that ICWA may apply and ordered the Agency to investigate the allegation.[2]

In a report prepared for the jurisdiction and disposition hearing, the Agency stated it had "reason to know" ICWA did not apply. The Agency detailed the inquiry used to reach this conclusion, explaining that Aunt contacted her grandmother—D.S.'s great-grandmother—to inquire about her Indian heritage. The great-grandmother stated that her great-grandmother—D.S.'s great-great-great-great-grandmother—was "affiliated with the Sioux and Blackfeet tribes." The Agency's report summarizes the additional information received from Aunt as follows: "[Aunt] denied that she or [her grandmother] have ever lived on an Indian reservation, have a tribal enrollment number or identification card indicating membership/citizenship in an Indian tribe. [Aunt] denied she has any reason to believe [D.S.] is an Indian child. She also denied that she or [her grandmother] had further information."

In an addendum report, the Agency indicated it was conducting a further inquiry based on the information it had previously gathered from Aunt (summarized *ante*). The

---

2       Aunt completed a parental notification of Indian status form stating she may have Indian ancestry with the "Blackfoot" tribe in Delaware.

3

Agency stated it was "contacting the identified tribes" to determine whether D.S. was a member, and that it would provide the results of its inquiry to the court in a future report.

In a second addendum report, the Agency explained that its ICWA specialist contacted, or attempted to contact, multiple Sioux and Blackfeet tribes. One tribe responded that D.S. was not a member; two tribes agreed to check their records regarding the child's tribal eligibility;[3] one tribe stated that "formal ICWA notice would be needed to determine whether the child is a member or eligible for enrollment"; and the Agency made multiple attempts to communicate with eight other tribes.[4]

At the jurisdictional hearing, the Agency asked the court to find the Agency "made an adequate inquiry and find there is no reason to know that this is an Indian child," and, therefore, that ICWA does not apply. The court agreed, finding "that the Agency so far has used reasonable inquiry, and there is no reason to believe or know that [ICWA] applies at this time. The information is so attenuated that it's really difficult to track it down, and I believe the Agency has made more than a reasonable effort to try and do so." In its minute order, the court found "the Agency has completed further inquiry as to [ICWA]. The [c]ourt finds that there is no reason to believe or know that [ICWA] applies."

---

[3] As of the date of the Agency's report, these two tribes had not responded to the Agency's inquiries.

[4] Two of these eight tribes did not answer telephone calls and their voicemail boxes were full, and six of them did not return voicemail messages left by the Agency. The Agency attempted to contact each of the eight tribes at least two times.

The juvenile court sustained the allegations of the petition under section 300, subdivision (f). The court placed D.S. in his foster home and gave the Agency discretion to allow unsupervised and overnight visits with Aunt. The court ordered reunification services for Aunt but denied reunification services for Mother.

Mother appealed.

## DISCUSSION

Mother argues that the juvenile court and the Agency failed to satisfy their inquiry obligations under ICWA, and asks that we remand the matter with directions for the Agency to perform further inquiry in compliance with section 224.2, subdivision (e).

### I.

*ICWA Requirements and Standard of Review*

Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes. (25 U.S.C. § 1921; 25 C.F.R. § 23.106; see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.) In 2006, California adopted various procedural and substantive provisions of ICWA. (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 703-704.) In 2016, new federal regulations were adopted concerning ICWA compliance. (81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. Part 23.) Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions

5

Code related to ICWA notice and inquiry requirements.  (Assem. Bill No. 3176 (2017-2018 Reg. Sess.); *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3 (*A.W.*).)  Those changes became effective January 1, 2019 (*A.W.*, at p. 662, fn. 3.), and govern here.[5]

The new statute specifies the steps the Agency and the juvenile court are required to take in determining a child's possible status as an Indian child.  An "Indian child" is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"  (25 U.S.C. § 1903(4); accord Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)  The Agency and the juvenile court have "an affirmative and continuing duty" in every dependency proceeding to determine whether ICWA applies.  (Welf. & Inst. Code, § 224.2, subd. (a) ["The duty to inquire [whether a child is or may be an Indian child] begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether he or she has any information that the child may be an Indian child."]; Cal. Rules of Court, rule 5.481(a); see *Isaiah W.*, *supra*, 1 Cal.5th at p. 14 ["juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status"].)

Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to

---

5    The parties do not dispute that the new statutory framework applies in this case, in which the hearings all occurred after January 1, 2019.  Unless otherwise specified, statutory references are to the code sections as currently numbered.

inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." When the Agency has "reason to believe" that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The required further inquiry includes (1) interviewing the parents and extended family members;[6] (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.[7] At this stage, contact with a tribe "shall, at a minimum," include telephone, facsimile, or

---

[6] Unless otherwise defined by the law or custom of the Indian child's tribe, the term "extended family members" shall mean "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); accord § 224.1, subd. (c) [adopting ICWA definition of extended family member].)

[7] Specifically, section 224.2, subdivision (e) provides in relevant part: "Further inquiry includes, but is not limited to, all of the following: [¶] (1) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3 [ICWA's notice provisions]. [¶] (2) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility. [¶] (3) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." California Rules of Court, rule 5.481(a)(4) sets forth these same requirements.

electronic mail contact to each tribe's designated agent for receipt of ICWA notice, and "sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case."  (§ 224.2, subd. (e)(3).)

The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a "reason to know"—rather than a "reason to believe"—that the child is an Indian child.[8]  Unlike the term "reason to believe," which is not defined by statute, a "reason to know" exists under any of the following circumstances:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child;  [¶]  (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village;  [¶]  (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;  [¶]  (4) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;  [¶]  (5) The court is informed that the child is or has been a ward of a tribal court; and

_____

[8]     See section 224.3, subdivision (a) ["If the court, a social worker, or probation officers knows or has reason to know, as described in subdivision (d) of Section 224.2, that an Indian child is involved, notice pursuant to Section 1912 of [ICWA] shall be provided for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement, as described in paragraph (1) of subdivision (d) of Section 224.1."].

[¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

If the inquiry establishes a reason to know an Indian child is involved, notice must be provided to the pertinent tribes. (§ 224.3, subds. (a), (b).) The notice must include enough information for the tribe to "conduct a meaningful review of its records to determine the child's eligibility for membership" (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576), including the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703; § 224.3, subd. (a)(5)(C)).

The juvenile court may alternatively make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was "proper and adequate" but no "reason to know" whether the child is an Indian child was discovered. (§ 224.2, subds. (i)(2), (g).) Even if the court makes this finding, the Agency and the court have a continuing duty under ICWA, and the court "shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry." (*Id.*, subd. (i)(2).)

Previously, before the 2019 amendments discussed *ante*, the same distinction existed between the inquiry and notice requirements of ICWA. Former section 224.3 "outline[d] the scope of a trial court's and a county welfare department's duty of *inquiry* under ICWA" (*In re J.L.* (2017) 10 Cal.App.5th 913, 919 (*J.L.*)), and former section 224.2 "outline[d] specific *notice* requirements that apply '[i]f the court, a social

9

worker, or probation officer knows or has reason to know that an Indian child is involved.' " (*Id*. at p. 920.)[9] However, the prior statute did not include the language "reason to believe"—now found in section 224.2, subdivision (e)—and instead specified that ICWA's inquiry and notice obligations were triggered when the juvenile court or the Agency "knows or has reason to know that an Indian child is involved." (*Id*. at pp. 919-920 [quoting former § 224.3, subd. (c) (further inquiry requirement) and § 224.2 (notice requirement)].)

On appeal, we review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 (*Hunter W.*); see § 224.2, subd. (i)(2) [ICWA findings "subject to reversal based on sufficiency of the evidence"].) But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*J.L.*, *supra*, 10 Cal.App.5th at p. 918.)[10]

---

[9]     Former section 224.3, subdivision (b) "outline[d] the circumstances 'that may provide reason to know the child is an Indian child," including "information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (*Id*. at p. 919 [quoting former § 224.3, subd. (b)].) Former section 224.3, subdivision (c) "specifie[d] that '[i]f the court, social worker, or probation officer knows or has reason to know that an Indian child is involved,' the social worker must make 'further inquiry' concerning the possible American Indian status of the child." (*Ibid*. [quoting former § 224.3, subd. (c)]; see *id*. at pp. 919-920 [duty of further inquiry included "interviewing the parents, Indian custodian, and extended family members to gather the information required" to complete ICWA notices].)

[10]     Mother contends that the de novo standard of review applies because the underlying facts are undisputed. (See *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254.)  Our conclusion in this case would be the same under either standard of review.

II.

*ICWA Compliance*

In her opening brief, Mother initially focused on challenging the Agency's

compliance with the *notice*, rather than the *inquiry*, requirements of ICWA, contending

the Agency "flouted . . . the notification requirements" and "[n]o formal ICWA notice

ever issued." After the Agency responded that notice was not required under the new

statutory framework discussed *ante*, Mother argued that the Agency's inquiry into D.S.'s

possible Indian heritage was inadequate under the new statutory framework. Despite the

principle that " '[p]oints raised for the first time in a reply brief will ordinarily not be

considered' " (*Jameson v. Desta* (2009) 179 Cal.App.4th 672, 674, fn. 1 (*Jameson*)), we

exercise our discretion to consider the merits of Mother's claim of inadequate compliance

with the inquiry requirements of ICWA.[11]

As detailed *ante*, section 224.2 creates three distinct duties regarding ICWA in

dependency proceedings. First, from the Agency's initial contact with a minor and his

_____

[11]    An appellate court may properly exercise its discretion to consider a contention
raised in a reply brief when the respondent fully briefed the issue in the respondent's brief
and, therefore, is not deprived of an opportunity to address the issue. (*Jameson*, *supra*,
179 Cal.App.4th at p. 674, fn. 1.) Here, the Agency fully briefed the issue of ICWA
compliance under the amended statutory framework in its respondent's brief. Moreover,
because Indian tribes have an interest in ascertaining whether a child in a dependency
action is an Indian child, we address the merits of the ICWA claim despite any defects in
a parent's brief. (See, e.g., *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 340 [declining
to find a waiver when mother omitted an argument in her opening brief "given concerns
that have been expressed about allowing a parent to waive a tribe's right to ICWA
notice"]; *In re Suzanna L.* (2002) 104 Cal.App.4th 223, 231-232 [notice requirements
serve the interests of the Indian tribes and violations cannot be waived by a parent's
failure to raise them].)

11

family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a "reason to *believe*" the child is an Indian child, then the Agency "shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone "knows or has reason to know that the child is an Indian child"], *id*., subd. (d) [defining circumstances that establish a "reason to know" a child is an Indian child]; § 224.3 [ICWA notice is required if there is a "reason to know" a child is an Indian child as defined under § 224.2, subd. (d)].)

Here, both parties agree that Aunt's statements regarding possible tribal affiliation were sufficient to establish a reason to believe D.S. is an Indian child and triggered a duty to conduct a further inquiry. Thus, the sole contested issue is the adequacy of the Agency's further inquiry.[12] We conclude that substantial evidence supports the juvenile court's finding that the Agency complied with its obligations pursuant to section 224.2, subdivision (e).

---

[12] The Agency argues that the standard for determining whether there is a "reason to know" a child is an Indian child—triggering the notice requirement—has changed under the amended statute, and that notice is no longer required upon a mere suggestion that the child is a member of a tribe. We need not address this argument because we resolve this case based on the inquiry requirements of ICWA and California law, and it is undisputed that the information provided by Aunt triggered the Agency's further inquiry obligations.

12

When the Agency has a reason to believe a child is an Indian child, as in this case, it must satisfy three requirements. First, the Agency must interview the parents, Indian custodian, and extended family members to gather relevant information, specified by statute, regarding the details of the child's birth, family members, and possible tribal affiliations. (§ 224.2, subd. (e)(1); see also § 224.3, subd. (a)(5).) Second, the Agency must contact "the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e)(2).) Third, the Agency must contact "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (*Id*., subd. (e)(3).) The Agency's contact with the tribe "shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Ibid*.)

The record adequately supports the juvenile court's finding that the Agency complied with these requirements. As part of its duty to inquire about a child's Indian ancestry pursuant to subdivision (e)(1), the Agency must interview extended family members. Under both ICWA and California law, "extended family members" includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. &

13

Inst. Code, § 224.1, subd. (c).) It does not include great-grandparents. The Agency therefore complied with this obligation by interviewing Aunt, the person who qualified as an "extended family member" within the meaning of ICWA.

The Agency has a further obligation under Welfare & Institutions Code section 224.2, subdivision (e)(3), to contact "the tribe or tribes and any other person that *may reasonably be expected to have information* regarding the child's membership, citizenship status, or eligibility." (Welf. & Inst. Code § 224.2, subd. (e)(3), italics added; see *In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*) ["a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status"].) Although D.S.'s great-grandmother may fall within this category, the Agency reasonably could conclude (based on its further communications with Aunt) that no further inquiry was needed because there was no further information of value to obtain from this third party. The Agency is not required to "cast about" for information or pursue unproductive investigative leads. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 199.) Based on this record—including Aunt's representations, after having spoken with her grandmother, that she had no "reason to believe [D.S.] is an Indian child," and had no "further information" to give the Agency—there was substantial evidence supporting the court's conclusion that the Agency complied with its further inquiry obligations.

Also pursuant to section 224.2, subdivision (e)(3), the Agency was required to contact the pertinent tribes and, in doing so, was required to "shar[e] information identified by the tribe as necessary for the tribe to make a membership or eligibility

14

determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(3).) The juvenile court did not err in finding that the Agency complied with these obligations. Although the Agency could have documented some of its efforts in more detail, it provided sufficient information to support the court's findings. The Agency explained its numerous attempts to contact twelve tribes based on the limited information provided by Aunt. The Agency obtained one response stating the child was not a member, and two tribes failed to notify the Agency of the child's membership status after agreeing to check their records. For eight of the remaining tribes, the Agency made repeated attempts to contact them, but it was ultimately unsuccessful because the tribes did not respond to the Agency's requests (or in two cases their voicemail boxes were full). One tribe informed the Agency that it would require a formal ICWA notice, but formal ICWA notice was not yet triggered under section 224.3, and there is no reason to conclude there was any further information to provide regarding the child's "membership or eligibility determination." (§ 224.2, subd. (e)(3).) As the juvenile court concluded, the Agency followed the proper procedures in conducting its further inquiry, but the limited information provided by Aunt was too attenuated for the Agency to do anything further.

In sum, the juvenile court's finding that the Agency completed its further inquiry is supported by the evidence. Similarly, there is substantial evidence supporting the juvenile court's conclusion that "there is no reason to believe or know that [ICWA] applies." Before finding ICWA inapplicable, the court must find that the Agency conducted a "proper and adequate further inquiry" and exercised "due diligence to identify and work with" all of the pertinent tribes. (§ 224.2, subds. (i)(2), (g).) For

15

reasons we have discussed *ante*, the court made an appropriate finding based on this record and the circumstances before it.

## DISPOSITION

The juvenile court's order is affirmed.

GUERRERO, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

Filed 3/24/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | D076517 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4426) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| M.J., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed on March 18, 2020, was not certified for publication.

It appearing the opinion meets the standards for publication specified in California Rules

of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is

GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication

specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties