Filed 6/23/22  In re J.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | C094709 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD241009) |
| Plaintiff and Respondent, | |
| v. | |
| R.M., | |
| Defendant and Appellant. | |

R.M. (father) appeals from the juvenile court's orders terminating parental rights and directing that J.M. (minor) be placed for adoption.  (Welf. & Inst. Code, § 366.26.)[1] Father contends the Sacramento County Department of Child, Family and Adult Services (Department) failed to comply with the requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  Specifically, father complains the Department failed to provide documentation of its further contacts with the Hoopa Valley Tribe, failed to

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

contact the same tribal representative with whom the Department originally communicated, and failed to obtain a supplemental response from the Hoopa Valley Tribe. Disagreeing, we will affirm the juvenile court's orders.

BACKGROUND

Following the minor's premature birth and positive test for methamphetamine, the Department filed a section 300 petition on her behalf alleging the minor was a person described in subdivisions (b)(1) and (j). The petition alleged the minor suffered, or was at substantial risk of suffering, harm due to substance abuse by mother. The petition further alleged substantial risk to the minor due to the abuse or neglect of, and eventual termination of mother's parental rights over, the minor's three half siblings. A protective custody warrant issued and the minor was later temporarily detained for protection. Eventually, the minor was released from the neonatal intensive care unit and placed in a confidential foster home.

On December 2, 2020, the minor's mother denied having any Native American heritage and later filed an ICWA-020 form confirming her denial. On December 3, 2020, father reported that while he was not registered, he possibly had Native American heritage through his paternal grandfather, who had resided on the Hoopa Valley Tribe's reservation in the "late 1980's / early 1990's." Father provided his paternal grandfather's name and that he had died in 2016. In light of this information and concurrent with the section 300 petition, the Department filed an ICWA-010(A) form indicating the minor may be a member of the Hoopa Valley Tribe of Northern California. Thereafter, father filed an ICWA-020 form confirming he may have Indian ancestry through the Hoopa Valley Tribe.

On December 9, 2020, the Department phoned Child and Family Services within the Hoopa Valley Tribe and spoke with Millie Grant. The Department provided father's grandfather's name and year of death, as well as father's information. Ms. Grant reported that father's grandfather did not appear to be a registered member, but she would look

2

further into enrollment and would contact the Department if she uncovered any new information.

On December 11, 2020, the juvenile court determined that while there was no reason to know, there was reason to believe the minor may be an Indian child. Accordingly, the juvenile court directed the Department to make further inquiries and, if necessary, provide notices as required by law. In accordance with this directive, the Department attempted to contact Ms. Grant on December 31, 2020, and was advised via the voicemail system that the Hoopa Valley Tribe offices were closed and would not reopen until January 4, 2021. The Department followed up with Ms. Grant on January 20, 2021, and she reported that father's grandfather was not a registered member of the tribe. Ms. Grant nonetheless suggested the Department try contacting the Yurok Tribe because it is closely related to the Hoopa Valley Tribe. The same day, the Department left a message with the Yurok Tribe requesting a call back.

On March 10, 2021, the Department spoke with an enrollment department representative of the Yurok Tribe and provided paternal grandfather's name. The representative reported that there was no one enrolled or eligible for enrollment with that last name.

On March 12, 2021, the juvenile court held a combined jurisdiction and disposition hearing, which mother and father failed to attend. The juvenile court sustained jurisdiction and determined removal was required. Father was not given reunification services, as he did not have presumed father status. Mother was bypassed for reunification services pursuant to section 361.5, subdivision (b)(10), (11), and (13). The juvenile court scheduled an ICWA compliance hearing for April 27, 2021, and set the matter for a section 366.26 hearing on July 13, 2021.

On April 2, 2021, the Department spoke with the paternal grandmother (father's mother) who indicated the minor may be an Indian child. The further inquiry section of the Department's ICWA compliance report reflects that the Department obtained the

3

name, address, phone number, and date of birth of the minor's mother, minor's father, and minor's paternal grandmother. The Department also obtained the name, date of birth, and date of death for the minor's paternal grandfather. In addition, the Department obtained the name, date of birth, and date of death for the father's biological grandmother and grandfather on his father's side. The ICWA compliance report indicated it was father's biological grandfather on his father's side that may have had Hoopa Valley Tribe affiliation.

The ICWA compliance report further reflected that the Department contacted the State Department of Social Services, Office of Tribal Affairs for assistance and reviewed the list of designated tribal agents prepared by the Bureau of Indian Affairs (BIA), locating the designated agent for the Hoopa Valley Tribe. The Department attempted to contact the Hoopa Valley Tribe by phone, e-mail, and certified letter. These attempted contacts occurred on April 2, April 7, and April 20, 2021. The Department sent a certified letter to, and e-mailed, the Hoopa Valley Tribe's designated agent, Ryan Jackson, providing "the parents' names, birth dates; the paternal grandparents' names, birth dates, and the paternal grandfather's date of death; and the paternal great-grandfather's . . . name." The tribe had not responded to these communications as of April 27, 2021.

On April 26, 2021, the Department "electronically contacted and sent a certified letter to" the Yurok Tribe inquiring as to the minor's eligibility for enrollment. On April 30, 2021, the Yurok Tribe responded, "indicating there were no records showing father, mother, paternal grandfather, paternal grandmother [or] paternal great grandfather" were enrolled members of the Yurok Tribe. This e-mail correspondence was attached to the Department's implementation and selection report.

On April 27, 2021, the juvenile court continued the ICWA compliance hearing to July 13, 2021, in order to obtain a response from the Hoopa Valley Tribe. Thereafter, at the July 13, 2021 hearing, the parties submitted the ICWA compliance issue without

4

further evidence or argument. The juvenile court ruled that "based on the information in the ICWA compliance report, I find there is no reason to know or believe that the child is an Indian child and the Indian Child Welfare Act does not apply to these proceedings." The juvenile court also granted mother's request for a contested section 366.36 hearing and set the contested hearing for August 24, 2021.

On August 24, 2021, the juvenile court determined the minor was adoptable and ordered mother's and father's parental rights terminated. The juvenile court did not reiterate the previous findings under ICWA, but it took judicial notice of all previous findings and orders. Father timely appealed.

## DISCUSSION

Father argues his termination order must be conditionally reversed and remanded so the Department can comply with its continuing ICWA duty to investigate whether the minor may be an Indian child. We disagree.

## A

" 'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.]' (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) When, as is the case here, the facts are undisputed, we review independently whether the requirements of ICWA have been satisfied. (*In re J.L.* (2017) 10 Cal.App.5th 913, 918.) However, we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467; *In re H.B.* (2008) 161 Cal.App.4th 115, 119-120.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.)" (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

5

"The juvenile court and social services agencies have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child." (*In re K.M.* (2009) 172 Cal.App.4th 115, 118-119; see § 224.2, subd. (a).) An Indian child for purposes of ICWA is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

Section 224.2, subdivision (d) provides that a juvenile court has reason to know a child involved in a proceeding is an Indian child under any of the following circumstances: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)-(6).)

When the juvenile court knows or has reason to know a child involved in a dependency proceeding is an Indian child, ICWA requires that notice of the proceedings be given to any federally recognized Indian tribe of which the child might be a member or eligible for membership. (25 U.S.C. §§ 1903(8), 1912(a); *In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) "At that point, the social worker is required, as soon as

6

practicable, to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see Cal. Rules of Court, rule 5.481(a)(4)(A).)

"If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an Indian child, the court shall confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership." (§ 224.2, subd. (g).)

However, if the "court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is *reason to know* that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e), italics added.) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know" as set forth in section 224.2, subdivision (d). (§ 224.2, subd. (e)(1).)

When there is reason to believe the child is an Indian child, further inquiry is necessary to help determine whether there is reason to know the child is an Indian child, including: "(A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of

Section 224.3[;] [¶] (B) Contacting the [BIA] and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[;] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under [ICWA] [citation]. Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2).)

B

Father argues the Department failed in its continuing duty of further investigation because it failed to provide documentation of its further contacts with the Hoopa Valley Tribe, failed to contact the same tribal representative with whom the Department had originally communicated, and failed to obtain a supplemental response from the Hoopa Valley Tribe.

This court's previous decision in *In re M.W.* (2020) 49 Cal.App.5th 1034 is instructive. In that case the father challenged the sufficiency of the response to the *reason to believe* inquiry and the evidentiary showing concerning those efforts. (*Id.* at pp. 1045-1046.) This court determined that a response to a *reason to believe* inquiry under section 224.2, subdivision (e) "does not require that the Department report its inquiry efforts to the juvenile court in the form of a declaration or in any particular form at all. The only guidance in that regard can be found by analogy to subdivision (g) of that section (applying specifically to circumstances where there is 'reason to know') which permits the court to confirm the Department's due diligence 'by way of a report,

8

declaration, or testimony included in the record.' (§ 224.2, subd. (g).)" (*In re M.W.,* at p. 1046.)

As contrasted with the more rigorous requirements triggered under federal and state law when there is a *reason to know* the minor is an Indian child (*In re M.W., supra,* 49 Cal.App.5th at pp. 1042-1044, 1047), section 224.2, subdivision (e) provides the only requirements under state law for a *reason to believe* scenario. (*In re M.W.,* at p. 1047.) The section requires further inquiry "as soon as practicable" by interviewing the parents and extended family members, contacting the BIA and the State Department of Social Services, and contacting by telephone, facsimile, or electronic mail each tribe's designated agent for receipt of notices under ICWA. (§ 224.2, subd. (e)(1)-(3).) Accordingly, in *In re M.W.,* this court concluded that after compliance with the section 224.2, subdivision (e) steps, it was not necessary to provide specific information about the tribal agents contacted or relay the specific familial tree information provided to those individuals. Nor was it necessary to provide the return receipts for certified mailings or copies of the actual responses from specific tribes. (*In re M.W.,* pp. 1045-1048.)

Here, we conclude substantial evidence supports the juvenile court's July 13, 2021 implied determination that the Department had complied with its further investigation duties under section 224.2, subdivision (e) and associated express finding that there was no reason to know or believe that the minor is an Indian child and that the ICWA did not apply to the proceedings. The record reflects that following father's report of possible Hoopa Valley Tribe heritage, the Department spoke with Millie Grant of the California Hoopa Valley Tribe, Child and Family Services, providing father's grandfather's name and year of death, as well as father's information. Ms. Grant's initial review reflected that father's grandfather was not a registered member, but Grant indicated she would look further into enrollment and report any new information.

9

The juvenile court found there was a *reason to believe* the minor may be an Indian child, directing the Department to conduct further inquiry, and the Department reached out to Ms. Grant two more times, learning from her that father's grandfather was indeed not a member of the Hoopa Valley Tribe.[2] This shows, contrary to father's arguments otherwise, that the Department followed up with Ms. Grant during the further inquiry stage.

Moreover, in compliance with section 224.2, subdivision (e)(1), the Department continued its investigation by interviewing the paternal grandmother, who indicated the minor may be an Indian child and provided further familial information as reflected in the ICWA compliance report. Included within the report were the names, addresses, phone numbers, dates of birth, and dates of death for numerous extended family members on the father's side gathered during the Department's investigation. This included information on father's biological grandfather on his father's side, who was the only family member alleged to have tribal affiliation, to wit, with the Hoopa Valley Tribe.

Then, specific to the requirements of section 224.2, subdivision (e)(2), the Department contacted the State Department of Social Services, Office of Tribal Affairs for assistance and consulted the BIA's list of designated tribal agents, locating the designated agent for the Hoopa Valley Tribe. Finally, in compliance with subdivision (e)(3), the Department attempted to contact that designated agent by phone, e-mail, and certified letter. The Department provided "the parents' names, birth dates; the paternal grandparents' names, birth dates, and the paternal grandfather's date of

---

[2] The Department also inquired and confirmed that father's paternal grandfather was not a member of the Yurok Tribe, both by speaking with a member of the Yurok Tribe enrollment office in March 2021 and by communicating directly with the Yurok Tribe via certified letter and e-mail in April 2021.

death; and the paternal great-grandfather's . . . name." There is no indication the tribe had responded as of the July 13, 2021, the date of the ICWA compliance hearing.

The record establishes that following the juvenile court's determination that there was reason to believe the minor might be an Indian child, the Department, in accordance with the section 224.2, subdivision (e) requirements, contacted extended family members and the State Department of Social Services, Office of Tribal Affairs. The Department consulted BIA materials and then contacted the registered agent for the Hoopa Valley Tribe via phone, e-mail, and certified letter in order to relay all of the information the Department had at that time relative to whether father's paternal grandfather may have been affiliated with the Hoopa Valley Tribe, and by extension, the possibility that the minor may have been an Indian child under the ICWA. Thereafter, the tribe was given approximately two months to respond to the Department's latest investigational efforts. This complied with the Department's duties under the ICWA. (§ 224.2, subd. (e)(1)-(3); *In re M.W., supra*, 49 Cal.App.5th at pp. 1046-1048.) Father's claims lack merit.

DISPOSITION

The juvenile court's orders are affirmed.

    /S/          <br>
MAURO, J.

We concur:

    /S/          
HULL, Acting P. J.

    /S/          
DUARTE, J.

11