Filed 4/5/17  Certified for publication 4/12/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J. L. et al., Persons Coming Under the Juvenile Court Law. | D070826 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14573AB) |
| v. | |
| K.B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Steven B. Duke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Mica Llerandi for Minors.

# I.

## INTRODUCTION

K.B. appeals a judgment terminating her parental rights to her two children, Jc.L. and Ja.L.  K.B. contends that the juvenile court erred in terminating her parental rights because the court failed to comply with "the inquiry/notice requirements" of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et. seq.; see also Welf. & Inst. Code,[1] § 224 et seq. [incorporating ICWA's requirements into California statutory law]).  We affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Overview of the dependency*[2]

In October 2014, when Jc.L. was four years old and Ja.L. was one year old, the San Diego County Health and Human Services Agency (Agency) filed dependency petitions pertaining to each child.  At the detention hearing, the juvenile court declared the children dependents of the court and removed them from K.B.'s custody.  At the conclusion of a contested 12-month review hearing in March 2016, the juvenile court terminated K.B.'s reunification services and set a hearing pursuant to section 366.26 for both children.  In July 2016, the court terminated K.B.'s parental rights to both Jc.L and Ja.L and selected a permanent plan of adoption for each child.

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Welfare and Institutions Code.

[2]     In light of the limited issue raised on appeal, we provide an abbreviated summary of the dependency proceedings.

B.  *Facts related to K.B.'s ICWA claim*

On October 21, 2014, the day of the detention hearing, K.B. signed a form entitled "Parental Notification of Indian Status."  K.B. wrote the words "not sure" next to the following three statements on the form:  "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe"; "I may have Indian ancestry"; "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe."[3]

On that same day, the children's father signed a "Parental Notification of Indian Status" form stating that he had no American Indian ancestry as far as he knew.

At the detention hearing, K.B.'s counsel stated the following:

> "[K.B.] has submitted a form indicating that she is not sure if she has any American Indian heritage.  I believe in the previous dependency there was a finding that ICWA did not apply.  However, mother has indicated that she's repeatedly been told by family members that she might have some American Indian heritage.  She does not have any more specific information to provide, but she indicates that she will research that information to the best of her ability and that if she is able to obtain any further information, that she needs to notify the social worker and the court immediately so that we can follow up on that."

Later during the same hearing, the following colloquy occurred:

> "The court: . . . [T]o clarify, the mother has received new information, but is it not available to her at this time [*sic*] to identify a federally recognized tribe?

---

3     The form also stated, "The child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe."  In addition, the form stated, "I have no Indian ancestry as far as I know."  K.B. did not write responses to these statements.

"[K.B.'s counsel]: It doesn't. And she doesn't know what relative that would be through. So it was apparently a very recent and somewhat general or vague reference that caused her to be interested in pursuing further information, but she's not been able to do so yet.

"The court: The father is not claiming Native American Indian heritage. So unless there's [an] objection, the court, at this time, on these facts, will find that the provisions of the Indian Child Welfare Act do not apply. That would be the finding of the court. [¶] The court would like to underscore the importance to mother that if you do get clarifying information, that you pass that along immediately.

"[K.B.]: I will.

"The court: We will have to reassess whether or not [ICWA] applies based on that.

"[K.B.]: Okay."

At the January 14, 2015 disposition hearing, the court found that "[n]otice pursuant to the [ICWA] is not required because the Court knows the child is not an Indian child." In its six-month and twelve-month status reports, and in its section 366.26 report, the Agency noted that the trial court had found that ICWA did not apply on October 21, 2014.

At the section 366.26 hearing at which the court terminated K.B.'s parental rights, the court found, with respect to both children, "[n]otice pursuant to the [ICWA] is not required because the Court has reason to know the child is not an Indian child. Reasonable inquiry has been made to determine whether or not the child is or may be an Indian child."

4

DISCUSSION

*The trial court properly determined that the Agency did not
violate ICWA's inquiry and notice provisions*

K.B. contends that the trial court committed reversible error in terminating her parental rights without requiring the Agency to comply with the inquiry and notice requirements of ICWA.[4] We assume for purposes of this decision that, because the material facts underlying K.B.'s claim are undisputed, "we review independently whether ICWA requirements have been satisfied." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 235, fn. 5 (*Michael V.*).)[5]

A. *Governing law*

1. *Overview of the relevant statutory scheme*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children

---

[4] Although K.B. claims in her opening brief that the trial court erred, *at the October 21, 2014 detention hearing*, in finding that ICWA did not apply, this finding is *not* reviewable in K.B.'s appeal from the *July 2016 judgment terminating her parental rights*. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10 (*Isaiah W.*) [parent "may not challenge the January 2012 dispositional order [finding ICWA notice was unnecessary] through an appeal from the April 2013 order terminating her parental rights"].) However, because of the juvenile court's "*continuing duty* to inquire whether [a child is] an Indian child in all dependency proceedings, including a proceeding to terminate parental rights" (*ibid.*), a mother may "challenge the juvenile court's finding of ICWA's inapplicability underlying the . . . order terminating her parental rights." (*Ibid.*) Accordingly, we broadly construe K.B.'s brief as claiming that the trial court erred in finding, *at the section 366.26 hearing*, that the Agency did not violate ICWA's inquiry or notice provisions.

[5] K.B. bases her claim entirely on the undisputed facts discussed in part II.B, *ante*.

from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.] ICWA declared that 'it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.] [¶] (2) The minimum standards established by ICWA include the requirement of *notice* to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.' " (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7–8, italics added.) Further, "courts and county welfare departments 'have an affirmative and continuing duty to *inquire* whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any judicial wardship proceedings if the child is at risk of entering foster care or is in foster care.' " (*Id.* at p. 9, italics added.)

In 2006, our state Legislature "incorporated ICWA's requirements into California statutory law." (*In re W.B.* (2012) 55 Cal.4th 30, 52.) "ICWA's many procedural requirements for juvenile dependency and delinquency cases are found in sections 224 through 224.6[ of the Welfare and Institutions Code]." (*Ibid.*)

6

2. *Relevant statutory provisions*

Section 224.3 outlines the scope of a trial court's and a county welfare department's[6] duty of *inquiry* under ICWA.  Section 224.3, subdivision (a) mandates that the "court [and] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been . . . filed is or may be an Indian child in all dependency proceedings . . . if the child is at risk of entering foster care or is in foster care."

Section 224.3, subdivision (b) outlines the circumstances "that may provide reason to know the child is an Indian child."  Section 224.3, subdivision (b) provides:

> "The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, the following:
>
> "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe.
>
> "(2) The residence or domicile of the child, the child's parents, or Indian custodian is in a predominantly Indian community.
>
> "(3) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal government, such as the Indian Health Service."[7]

---

6    It is undisputed that the Agency is a county welfare department for purposes of section 224.3.

7    California Rules of Court, rule 5.481(a)(5) also specifies the "circumstances that may provide reason to know the child is an Indian child" and is nearly identical to section 224.3, subdivision (b).

Section 224.3, subdivision (c) specifies that "[i]f the court, social worker, or probation officer knows or has reason to know that an Indian child is involved," the social worker must make "further inquiry" concerning the possible American Indian status of the child. Section 224.3, subdivision (c) provides:

> "If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2,[8] contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."[9]

---

[8] Section 224.2, subdivision (b) specifies the contents of an ICWA notice.

[9] California Rules of Court, rule 5.481(a)(4) similarly provides: "If the social worker, probation officer, licensed adoption agency, adoption service provider, investigator, or petitioner knows or has reason to know that an Indian child is or may be involved, that person or entity must make further inquiry as soon as practicable by: (A) Interviewing the parents, Indian custodian, and 'extended family members' as defined in 25 United States Code sections 1901 and 1903(2), to gather the information listed in Welfare and Institutions Code section 224.2(a)(5), Family Code section 180(b)(5), or Probate Code section 1460.2(b)(5), which is required to complete the *Notice of Child Custody Proceeding for Indian Child* (form ICWA-030); (B) Contacting the Bureau of Indian Affairs and the California Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership; and (C) Contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."

Section 224.2 outlines specific *notice* requirements that apply "[i]f the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved."

3. *Relevant case law*

In *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1465 (*Hunter W.*), a mother in a dependency proceeding contended that the trial court erred in "finding that the ICWA did not apply . . . and by not requiring [a county welfare department] to make an adequate inquiry into Hunter's [the dependent child] possible Indian ancestry." The *Hunter W.* court described the facts pertaining to mother's ICWA claim as follows:

> "On July 1, 2009, mother signed [a] . . . form indicating that she may have Indian ancestry through her father, William B., and her paternal grandmother, Annie Mae B. Mother indicated that her paternal grandmother died in Chicago, Illinois, and that her father was born, and currently resides, in Chicago. She did not provide any contact information for her father. On July 2, 2009, the court addressed mother's claim of Indian heritage. Mother stated that she was not registered with any tribe. She last had contact with her father 'probably a year ago' and was not sure that he was her biological father. She did not know his address, phone number, or date of birth." (*Hunter W.*, *supra*, at p. 1467.)

The trial court in *Hunter W.* found that it had no reason to know Hunter was an American Indian child. On appeal, mother contended that "she provided 'information suggesting . . . the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe.' " (*Hunter W.*, *supra*, 200 Cal.App.4th at p. 1467, quoting § 224.3, subd. (b)(1).) The *Hunter W.* court rejected this claim, reasoning in part:

> "Here, mother indicated she may have Indian heritage through her father and deceased paternal grandmother. She could not identify the particular tribe or nation and did not know of any relative who

9

was a member of a tribe. She did not provide contact information for her father and did not mention any other relative who could reveal more information. Mother argues that [the county welfare department] could have questioned her remaining relatives for more information, but this does not address the issue of whether the information *mother* provided was sufficient to trigger this duty. Mother offers no authority in support of her position that the court erred in finding her information too speculative to trigger ICWA. Specifically, she cites no authority in which the court found sufficient information to trigger ICWA when the parent could not even identify the tribe the family may have had connections to." (*Hunter W.*, *supra*, at p. 1468.)

The *Hunter W.* court concluded that the trial court had properly ruled that "mother's claim of Indian heritage through her father was too speculative to begin with," and that the trial court was correct in stating, " '[T]he court does not believe that family lore . . . is reason to know a child would fall under [ICWA].' " (*Id.* at p. 1469.)

In *In re O.K.* (2003) 106 Cal.App.4th 152 (*O.K.*), at a section 366.26 hearing, the juvenile court stated, " 'There are references concerning the [ICWA], but there doesn't appear that there is a parent who is either enrolled or eligible for enrollment.' " The court then inquired, " '[I]s that correct?' " (*O.K.*, *supra*, at p. 155.) On appeal, the *O.K.* court noted that the dependent children's grandmother, who was present at the hearing, replied that the children's father might have American Indian ancestry:

"The paternal grandmother, who was present at the hearing, replied, 'I'm not understanding that too well, but the boy—the young man may have Indian in him. I don't know my family history that much, but where were [*sic*] from it is that section so I don't know about checking that.' The paternal grandmother said she was not an enrolled member, she did not know whether she or the father was eligible for membership and she was not able to identify a particular tribe or nation." (*Ibid.*)

10

Notwithstanding these statements, the juvenile court found that "there was no reason to believe the children were Indian children." (*O.K.*, *supra*, 106 Cal.App.4th at p. 155.)

On appeal, "[a]ppellants claim[ed] that the information provided by the paternal grandmother was sufficient to give the juvenile court reason to believe that the minors might be Indian children because it came from a 'close relative.' " (*O.K.*, *supra*, 106 Cal.App.4th at p. 157.)  In analyzing this claim, the *O.K.* court acknowledged, "[W]e can certainly envision circumstances under which information from a close relative concerning a child's Indian ancestry would be sufficient to trigger the notice requirements of the ICWA." (*Ibid.*)  However, the *O.K.* court "conclude[d] with little difficulty that such is not the situation here."  The court reasoned:

> "[T]he information [the paternal grandmother] provided was insufficient to give the court reason to believe that the minors might be Indian children.  The information provided by the paternal grandmother that the father 'may have Indian in him' was not based on any known Indian ancestors but on the nebulous assertion that 'where were [*sic*] from is that section . . . .'  This information was too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children." (*Ibid.*)

In *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1516 (*Jeremiah G.*), the court reaffirmed the holding in *O.K.*, stating:

> "We publish this opinion to emphasize, again, what we thought that our court made clear in . . . *O.K.*[, *supra*, 106 Cal.App.4th 152].  In a juvenile dependency proceeding, a claim that a parent, and thus the child, 'may' have Native American heritage is insufficient to trigger ICWA notice requirements if the claim is not accompanied by other information that would reasonably suggest the minor has Indian ancestry."

11

The *Jeremiah G.* court stated further that a father's "assertion that there was a 'possibility' the great-grandfather of the minor's father 'was Indian,' without more, was too vague and speculative to require ICWA notice to the Bureau of Indian Affairs." (*Jerimiah G.*, *supra*, 172 Cal.App.4th at p. 1516.)

In *In re J.D.* (2010) 189 Cal.App.4th 118, 125 (*J.D.*), the dependent children's paternal grandmother told a child welfare agency, " 'I can't say what tribe it is and I don't have any living relatives to provide any additional information.  I was a little kid when my grandmother told me about our Native American ancestry but I just don't know which tribe it was.' "  Notwithstanding this statement, the trial court found that "it had no reason to know that [the dependent child] would fall under ICWA." (*Id.* at p. 123.)  In affirming the trial court, the *J.D.* court concluded that the information from the grandmother was "too vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children." (*Id.* at p. 125.)

B.  *Application*

In this case, K.B. indicated on a "Parental Notification of Indian Status" form that she was "not sure" whether she had Indian ancestry, and her counsel stated in court that K.B. had "repeatedly been told by family members that she might have some American Indian heritage."  However, K.B.'s counsel also stated that K.B. had no "more specific information to provide" concerning her possible American Indian ancestry and explained that K.B. did not know which relatives might have such ancestry.  Counsel also stated

12

that it was a "somewhat general or vague reference" that had "caused [K.B.] to be interested in pursuing further information."[10]

Thus, K.B. did not know whether she had American Indian heritage of any kind, did not know the names of the relatives who might have had such heritage, and had heard only a "general or vague" reference to possible heritage. Such " 'family lore,' " (*Hunter W.*, *supra*, 200 Cal.App.4th at p. 1469) of possible American Indian heritage does not trigger a social worker's duty to conduct a "further inquiry" (§ 224.3, subd. (c)) into a child's possible Indian ancestry. (*Hunter W.*, *supra*, at pp. 1468–1469; compare with *Michael V.*, *supra*, 3 Cal.App.5th at p. 235 [concluding county welfare department's inquiry into mother's possible American Indian heritage was inadequate in light of mother's statement she had been told by a social worker that her *mother was* a "full-blooded Indian"].) Further, vague statements suggesting that a child " 'may' have Native American heritage [are] insufficient to trigger ICWA *notice* requirements." (*Jeremiah G.*, *supra*, 172 Cal.App.4th at p. 1516, italics added.)

In her opening brief, K.B. relies principally on this court's decision *In re Damian C.* (2009) 178 Cal.App.4th 192 (*Damian C.*). In *Damian C.*, this court described the possible American Indian ancestry of the family as follows:

> "[Mother] submitted a 'Parental Notification of Indian Status,' . . . form . . . , stating she may have Indian ancestry as follows: 'Pasqua Yaqui—enrollment is currently closed' and 'M[aternal] G[rand]

---

10    K.B.'s counsel also stated her belief that "in the previous dependency there was a finding that [ICWA] did not apply." The clerk's transcript indicates that counsel was correct. In a prior dependency involving Jc.L., the juvenile court found that ICWA did not apply.

13

F[ather] Felipe Manuel C[.] is descended from tribe.' [¶] The social worker reported the Agency's ICWA noticing specialist subsequently interviewed the maternal grandfather, Manuel C., and asked the same questions the social worker had asked earlier.[11] Manuel C. answered 'no' to each question. He stated he had heard his father, Felipe C., was either Yaqui or Navajo Indian, but later was informed the family did not have Indian heritage. He said he did not know to which Yaqui or Navajo tribe or band the family may be related or where the tribe or band may be located. He understood the family had been trying to research its possible Indian heritage, but they kept hitting dead ends because they did not have enough information. He further stated Felipe C. lives in Temecula, California, but he is not in contact with Felipe C. and does not know his address or telephone number." (*Id.* at pp. 195–196, fn. omitted.)

The *Damian C.* court noted that the trial court, after confirming that a social worker had spoken directly with Manual C. about the family's possible American Indian heritage, found that ICWA did not apply. (*Damian C.*, *supra*, at p. 196.)

In vacating the trial court's determination that ICWA did not apply, the *Damian C.* court concluded that the county welfare department had reason to know that the dependent minor was an American Indian child. (*Damian C.*, *supra*, 178 Cal.App.4th at

---

11 The questions were:
"  '[1.] Has anyone in the family ever lived on a reservation?
"  '[2.] Has anyone in the family ever received any financial, medical or educational assistance from a tribe?
"  '[3.] Does anyone in the family speak the Native American Indian language?
"  '[4.] Is anyone active in tribal activities such as tribal council meetings, religious rituals or pow-wows?
"  '[5.] Is any family member a member of a tribe or an enrolled member in a tribe?' "  (*Damian C.*, *supra*, 178 Cal.App.4th at p. 195.)
In a footnote omitted from the quotation, the *Damian C.* court noted that, in speaking with Manual C., "[t]he ICWA noticing specialist substituted for the fourth question, 'Are you or anyone active in tribal activities? (i.e. religious ceremonies or political activities.)' " (*Damian C.*, *supra*, 178 Cal.App.4th at p. 195, fn. 1.)

p. 199.) The *Damian C.* court reasoned that the minor's mother had identified both a specific relative and a specific tribe through which such ancestry might flow, and the mother's grandfather stated that he had "heard his father . . .was Yaqui or Navajo." (*Ibid.*) In contrast, as noted previously, K.B. was *unable* to identify a specific tribe or any relative through which American Indian ancestry in her family might flow, and there is no other evidence in the record of such ancestry. In short, the record of Indian ancestry in this case is much closer to that in *Hunter W.* than it is to that in *Damian C.*

K.B. also argues that the Agency "abdicate[d] its responsibility by placing the burden on [her] to provide further information." We disagree. For the reasons discussed above, the Agency's duty to pursue "further inquiry" under section 224.3, subdivision (c) was not triggered. (§ 224.3, subd. (c) ["*If* the court [or] social worker . . . *knows or has reason to know that an Indian child is involved*, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child" (italics added)].) Further, the trial court properly admonished K.B. to inform the Agency or the court if she obtained "clarifying information," of any possible American Indian ancestry, since such additional information would have the potential to trigger the Agency's inquiry and noticing duties.

Finally, in her reply brief, K.B. cites *In re Andrew S.* (2016) 2 Cal.App.5th 536 (*Andrew S.*) as supporting her contention that the Agency failed to satisfy its duty of inquiry. In *Andrew S.*, the mother of the dependent children filled out a form indicating that the children had no American Indian ancestry as far as she knew. (*Id.* at p. 545.) A few days later, prior to anyone from the county welfare department speaking to the

15

children's presumed father, the trial court found that it had no reason to know that the children were American Indian children under ICWA. (*Andrew S.*, *supra*, at p. 545.) Thereafter, the presumed father of the minor children "indicated [to a social worker] he might have Indian ancestry on his father's side but could not identify a tribe and said he had no further information." (*Id.* at p. 540.) The presumed father also told the social worker that he had seven siblings. (*Ibid.*) Notwithstanding this new information, the trial court did not revisit the ICWA issue. (*Andrew S.*, at pp. 545–546.)

In his opening brief on appeal, the presumed father "argued his statement to the social worker that he may have Indian ancestry was sufficient to trigger ICWA's notice requirement." (*Andrew S.*, *supra*, 2 Cal.App.5th at p. 546.) However, the presumed father later withdrew this claim "in light of the parties' agreement as to [a different] error in the juvenile court's jurisdiction finding and removal order." (*Id.* at p. 547.) The *Andrew S.* court accepted the presumed father's withdrawal of the ICWA notice claim "but direct[ed] the juvenile court on remand to reconsider its decision that ICWA does not apply in this case." (*Andrew S.*, at p. 547.) The *Andrew S.* court further stated:

> "[T]he burden of developing . . . information [pertaining to the presumed father's American Indian ancestry] is not properly placed on [the presumed father] alone. Section 224.3, subdivision (a), imposes on child protection agencies, as well as the juvenile court, the affirmative and continuing duty to inquire whether a dependent child is or may be an Indian child. [Citations.] As soon as practicable, the social worker is required to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. (§ 224.3, subd. (c); *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539; Cal. Rules of Court, rule 5.481(a)(4).) From the record presented to us, it appears the [county welfare department] and the

16

juvenile court failed to satisfy that duty; neither the court nor the [county welfare department] made any effort to develop additional information that might substantiate [the presumed father's] belief he may have Indian ancestry by contacting his siblings or other extended family members. Both federal and state law require more than has been done to date. On remand, an adequate investigation by the [county welfare department] with a full report to the court must be promptly completed." (*Id.* at pp. 547–548.)

To the extent that the *Andrew S.* court intended to suggest that the father's statement that he "might have Indian ancestry on his father's side," (*Andrew S.*, *supra*, 2 Cal.App.5th at p. 540) was sufficient to trigger the county welfare department's duty to conduct a "further inquiry" under section 224.3, subdivision (c), the court did not explain its reasoning. (See § 224.3, subd. (c) ["If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved, the social worker or probation officer is required to make further inquiry"].) The *Andrew S.* court did not discuss *Hunter W.* or any of the other case law discussed in part III.A.3, *ante*, nor did the court explain why the presumed father's equivocal and vague statement that he "might have Indian ancestry on his father's side" (*Andrew S.*, *supra*, at p. 540.) constituted "information suggesting that the child is an Indian child." (*In re Shane G.*, *supra*, 166 Cal.App.4th at p. 1538; § 224.3, subd. (b) [stating that "[t]he circumstances that may provide reason to know the child is an Indian child include . . . (1) A person having an interest in the child . . . suggesting the child is a member of a tribe or eligible for membership in a tribe"].) In any event, even the minimal information that the presumed father provided in *Andrew S.*, exceeded that which K.B provided. In *Andrew S.*, the presumed father stated that his potential American Indian ancestry stemmed from his

17

"father's side" (*Andrew S.*, at p. 540), whereas K.B.'s counsel indicated that she did not "know what relative [her potential American Indian ancestry] would be through." For these reasons, we conclude that *Andrew S.* does not compel reversal in this case.

Accordingly, we conclude that the trial court properly determined that the Agency did not violate ICWA's inquiry and notice provisions.

IV.

DISPOSITION

The judgment terminating K.B.'s parental rights is affirmed.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J. L. et al., Persons Coming Under the Juvenile Court Law. | D070826 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14573AB) |
| v. | ORDER GRANTING PUBLICATION |
| K.B., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed April 5, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to: All parties