Filed 4/14/23  In re B.G. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re B.G., a Person Coming Under the Juvenile Court Law. | B323467<br>(Los Angeles County<br>Super. Ct. No.<br>17CCJP01670C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Melania Vartanian, Deputy County Counsel for Plaintiff and Respondent.

_____

Manuel G. (Manuel) appeals from the juvenile court's order terminating parental rights.  This case comes before us a second time following our conditional reversal and remand for further inquiry into Manuel's Indian ancestry pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. 1901 et seq.) and Welfare and Institutions Code sections 224.2 and 224.3.[1]  (*In re B.G.* (Aug. 20, 2021, B309291) [nonpub. opn.].)  This time, Manuel contends the Los Angeles County Department of Children and Family Services (DCFS) failed to adequately investigate his affiliation with the Chumash Tribe.  We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    The Underlying Facts

Manuel is the biological father and nonoffending parent of B.G., who was born in 2018 to mother Kimberly.  Manuel was arrested and incarcerated in March 2020 for murder.  Prior to this arrest, Manuel had been in and out of custody.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

**B.    The Proceedings Prior to the First Appeal**

A juvenile dependency petition was sustained against Kimberly as a result of her substance abuse and mental health issues, and B.G. was declared a dependent of the juvenile court. At the disposition hearing, B.G. was ordered removed from the parents' custody and to remain placed with maternal grandmother.[2]  Manuel was still incarcerated at the time of the disposition hearing.

The juvenile court rejected Manuel's request for presumed father status and denied him reunification services.  Additionally, the court found ICWA and related state statutes did not apply. There was "[no] reason to know" B.G. was an Indian Child. Manuel timely appealed from the disposition order.

**C.    The First Appeal**

Manuel appealed on grounds the juvenile court erroneously denied him presumed father status and found ICWA did not apply.  (*In re B.G., supra,* B309291.)

We rejected Manuel's claim of presumed father status.  As for his ICWA claim, an amendment to section 224.2 defining the criteria for "reason to believe," as opposed to "reason to know," that a child is an Indian child became effective shortly before the jurisdiction and disposition hearing in this case.  We concluded specific references by Manuel and his relatives to Apache and Yaqui heritage triggered the statutory duty of further inquiry into Manuel's Indian heritage.  As a result, we conditionally reversed the juvenile court's order removing B.G. from parental

---

[2] B.G.'s half sibling was also ordered placed with maternal grandmother.  Kimberly and the half sibling were not parties to either appeal in this case.

3

custody and remanded with directions for DCFS to conduct an adequate inquiry under sections 224.2 and 224.3.  If the juvenile court found ICWA applied, it was then to comply with ICWA and related state statutes.  If the court found ICWA did not apply, it was to reinstate the removal order.  (*In re B.G., supra,* B309291.)

D.   **The Proceedings on Remand:  DCFS's Further Inquiry Into Manuel's Indian Heritage[3]**

On remand, the court ordered DCFS to correct prior deficiencies in its original inquiry into Manuel's Indian heritage by questioning parental relatives and other extended family members.

Manuel informed DCFS that only Patricia, B.G.'s paternal grandmother, would know more about the paternal relatives' Apache and Yaqui ancestry.  In an October 2021 interview, Patricia told the social worker that paternal great-grandmother "had some Indian ancestry," but Patricia was unsure which tribe.  Patricia also stated paternal great-grandfather "ha[s] some . . . kind of Yaqui blood line and Apache."  Patricia added, " '[M]y uncle also has ancestry . . . . [M]y father's brother unfortunately . . . died about two months ago.' "  Patricia indicated her cousin Al (the uncle's son) " '[was] very involved with the tribe and would know more.' "

On October 22, 2021, Al told a DCFS social worker that when " 'we were small, we use[d] to participate in [tribal] rituals

---

[3] Because the sole issue on appeal is whether DCFS met its statutory duty of making further inquiry on remand, we discuss only the facts and law pertinent to that issue.

4

and gathering[s]' " until their father was incarcerated.[4]  Al said, " 'My mother was part of Chumash in San Inez[;] my father['s] side[,] which is how Patricia is related to us[,] he [is] Pasqual [*sic*] Yaqui."  Al explained because the tribe had refused to acknowledge them, family members were unable to become registered members.  Al then went on to say his paternal grandfather was a Spaniard and paternal grandmother "was Yaqui"—referring to B.G.'s paternal great-great-grandfather and great-great-grandmother, respectively.

On November 16, 2021, Manuel's father (B.G.'s paternal grandfather) informed a DCFS social worker that he had no Indian ancestry.  The same day, B.G.'s paternal great-grandfather declined to discuss his Indian heritage with DCFS.

The bottom line:  According to Manuel's paternal relatives, their affiliation with the Pasqua Yaqui Tribe could be traced from B.G.'s paternal great-great-grandmother to B.G.'s paternal great-grandfather to B.G.'s paternal grandmother and to B.G.'s father Manuel.  However, DCFS later confirmed that, in response to an earlier inquiry, the Pascua Yaqui Tribe sent a letter on July 31, 2020, stating that neither Manuel nor B.G. was a member of the tribe or had a membership application pending.  All other relatives contacted by DCFS stated there was no Indian ancestry.

As for the Chumash Tribe, the only family member supposedly affiliated with that tribe was the wife of Patricia's uncle.  She is not in a lineal relationship through Manuel's paternal relatives.

---

[4] Although DCFS refers to Al as B.G.'s paternal great-uncle, as the cousin of B.G.'s paternal grandmother Patricia, Al appears to be B.G.'s cousin twice removed.

Presented with the preceding evidence, the juvenile court ruled this was not "a case governed by the Indian Child Welfare Act." The court later terminated parental rights of Manuel and Kimberly. Manuel timely appealed.

## E. The Instant Appeal

In this appeal, Manuel argues DCFS again failed to comply with sections 224.2 and 224.3. Specifically, Manuel contends the Chumash Tribe was not asked whether his relatives were members or eligible for membership.

## DISCUSSION

## 1. Standard of Review

When the facts are undisputed, we review independently whether the requirements of ICWA have been satisfied. (*In re J.L.* (2017) 10 Cal.App.5th 913, 918.) However, where the facts are disputed, we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 184.)

Although the parties disagree on the applicable standard of review, we affirm the juvenile court's ICWA finding that DCFS met its statutory duty of further inquiry under either standard.

## 2. Applicable Law

An " 'Indian child' " is any unmarried person under 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord, Welf. &

6

Inst. Code, § 224.1, subd. (b) [adopting ICWA's definition of
" 'Indian Child' "].)

There are two separate ICWA obligations which are
sometimes conflated:  the duty to give notice to a tribe, and the
duty to conduct further inquiry to determine whether notice is
necessary.  Notice to a tribe is required, under federal and state
law, when the court knows or has reason to know the child is an
Indian child.  (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 784.)
The court and DCFS have a "continuing duty to inquire whether
a child [in a dependency proceeding] is or may be an Indian
child."  (§ 224.2, subd. (a).)  If the court or DCFS has "reason to
believe" that the child might be an Indian child, it must "make
further inquiry" into the child's status.  (§ 224.2, subd. (e).)
Under section 224.2, subdivision (e), further inquiry includes
"[i]nterviewing the . . . extended family members" to gather
additional information as well as "[c]ontacting . . . any other
person that may reasonably be expected to have information
regarding the child's membership, citizenship status, or
eligibility."  (§ 224.2, subd. (e)(2)(A), (C).)

3. **DCFS Satisfied Its Duty of Further Inquiry**

Manuel does not challenge the juvenile court's findings to
the extent they pertain to his Apache and Yaqui ancestry.
Instead, he maintains DCFS was required to ask the Chumash
Tribe whether Manuel's paternal relatives were members, rather
than rely on cousin Al's "ambiguous" statements.

To be sure, an Indian child's tribe has the exclusive right to
determine whether a child is an Indian child.  (*Isaiah W.* (2016) 1
Cal.5th 1, 8.)  But the tribe's need to intervene arises only when
the juvenile court knows or has a reason to know the child is an
Indian child and notice must be given to the tribe.  Here, because

7

there was a reason to believe B.G. might be an Indian child, DCFS was obligated to inquire further, which it did by interviewing immediate and extended paternal family members. The inquiry yielded a potential member of the Chumash Tribe— the wife of a paternal great-uncle, who is related by marriage, not by blood, to Manuel's paternal relatives. We discern no ambiguity in Al's identification of his mother as Chumash. Thus, there was no reason to know that B.G. was biologically related to a member of the Chumash Tribe, so DCFS had no duty to notify the tribe. Manuel's argument to the contrary mistakes the facts in this case and the law triggering notice to the tribes.

## DISPOSITION

The juvenile court's order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

8