Filed 9/1/23  In re A.C. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | B325558 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 19CCJP05685C |
| Plaintiff and Respondent, | |
| v. | |
| M.T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Linda Sun, Judge.  Conditionally affirmed and remanded with directions.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Mother appeals a juvenile court order terminating her parental rights to her son A.C. (See Welf. & Inst. Code, § 366.26, subd. (b)(1).)[1] She contends the evidence was insufficient to support the court's finding that the Los Angeles County Department of Children and Family Services (Department) conducted an adequate inquiry under state law (§ 224 et seq.) implementing the Indian Child Welfare Act of 1978 (ICWA or Act) (25 U.S.C. § 1901 et seq.). The record shows mother presented information to the court indicating her paternal grandfather was a registered member of an Indian tribe and received attendant benefits, although she did not know the tribe's name. While the Department made efforts to interview maternal relatives to verify the information, it did not contact the Bureau of Indian Affairs or the State Department of Social Services for assistance in identifying the tribe, as required under section 224.2, subdivision (e)(2)(B). Under these circumstances, we must conditionally affirm the juvenile court's order and remand for further proceedings consistent with ICWA and our implementing state law.

### FACTS AND PROCEDURAL HISTORY

The juvenile court took jurisdiction of A.C. (born November 2015) on sustained counts of neglect stemming from the parents' abuse of methamphetamine and other narcotics. (§ 300, subd. (b).)[2]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code; rule references are to the California Rules of Court.

[2] Father is not a party to this appeal.

The maternal grandmother and great-grandmother raised mother. Her parents had divorced when she was eight years old. Mother had a relationship with her father, but he passed away when she was 12 years old. Her only sibling is a half-brother on her father's side.

Before the detention hearing, mother and father each filed a Parental Notification of Indian Status form (ICWA-020). Both parents declared they had no Indian ancestry as far as they knew.

On September 4, 2019, the juvenile court held the initial detention hearing. In addition to the parents, the maternal grandmother, great-grandmother, and great-aunt were present. After receiving the parents' ICWA-020 forms and noting the parents reported no Indian ancestry, the juvenile court announced its tentative finding that there was no reason to believe A.C. was an Indian child, before asking the parties present if "[a]nyone wish[ed] to be heard." No one objected to the finding. The court ordered the parents to keep the Department, their counsel, and the court aware of any new information relevant to possible ICWA status.

On November 27, 2019, the court held the adjudication hearing. The maternal relatives were present outside the courtroom waiting for mother, who had stepped away before the hearing began. The court asked counsel if there was any "further information regarding Indian ancestry from any party at this time?" Neither father's nor mother's counsel responded. The court reaffirmed it had no reason to believe A.C. was an Indian child, citing the parents' denials of Indian ancestry on their ICWA-020 forms.

The Department maintained contact with the maternal grandmother and great-grandmother regarding mother's progress on her case plan, until the court terminated the parents' reunification services on March 11, 2021. The maternal great-grandmother later passed away.

In advance of the pending section 366.26 hearing, the Department reported that, on May 11, 2022, mother had again denied having Indian ancestry in her family.

On April 19, 2022, mother filed a section 388 petition requesting modification of the court's order terminating her reunification services. Mother declared she had since enrolled in a drug treatment program and submitted to drug testing. The juvenile court set a hearing on the petition.

On May 23, 2022, the court held a hearing on mother's section 388 petition. Mother did not appear. Her counsel, however, reported that mother "recently . . . found out that her grandfather on her father's side is a member of a tribe, and she believes him to be actually receiving benefits." Mother had advised counsel that she planned to contact "some relatives to obtain the additional information," but he had not been able to reach her since their conversation a week earlier. Counsel did not know the maternal great-grandfather's name or the name of the tribe. The court ordered the Department to contact mother, to reinterview all maternal relatives regarding mother's ICWA claim, and to provide necessary notices to the tribes before the next hearing.

At the court's direction, mother's counsel filed a new ICWA-020 form, declaring, "Mother has information that her grandmother and [the] great grandfather on mother's father's

4

side were registered members of a native American tribe." With respect to the name of the tribe, the form stated, "Unknown."

On June 2, 2022, the Department reached mother. Mother reported, " 'I just found out that my dad's grandmother was half Indian.' " She provided her grandfather's name (Roberto T.), but said he was "on vacation" and she did not know how to reach him. She had a paternal cousin who lived nearby and might know more, but she did not have contact information for him or any of her paternal relatives. Mother said she "would be doing an unannounced visit" in a few days to inquire about her possible Indian heritage and would contact the Department on June 6, 2022. Mother did not contact the dependency investigator.

On June 8, 2022, the dependency investigator left a voicemail message on mother's cell phone, asking mother to contact the investigator about her family's Indian heritage. Mother did not respond to the message. The investigator attempted to contact mother twice more the same week and received no response. She was unable to leave a message because mother's voicemail box was full. The investigator sent mother a text message, but again received no response.

On June 21, 2022, the Department filed a report detailing its efforts to investigate mother's claimed Indian heritage. The report stated mother had "failed to provide any information to submit an inquiry regarding her claims of American Indian Heritage"; however, it contained no record of the Department contacting the Bureau of Indian Affairs or State Department of Social Services with the maternal great-grandfather's name or information about the benefits mother claimed he received.

Mother did not appear at the June 28, 2022 hearing. The court observed mother had not provided sufficient

information for the Department to investigate her ICWA claim. Mother's counsel said he had the names of some family members. He also expected to receive more information, but he had not heard back from mother. He still did not have contact information for the maternal great-grandfather but said he would provide it as soon as he received it from mother.

The juvenile court ordered the Department to "follow up with" the individuals mother's counsel identified and "to comb through all the earlier reports to identify additional family members" who had not been interviewed regarding ICWA.

Mother's counsel provided the names of two relatives and their dates of birth. In a subsequent report to the court, the Department noted both relatives were deceased. The report did not document the relative's relationship to mother or what efforts the Department made to use the relatives' information to investigate A.C.'s possible ICWA status. The report stated only that "both relatives were deceased, therefore, [the dependency investigator] was unable to interview [them]."

From July 12 to July 18, 2022, the dependency investigator made three attempts to contact mother. Mother did not answer her phone, her voicemail box was still full, and she did not respond to the investigator's text messages or otherwise communicate with the Department.[3]

---

[3]    On July 22, 2022, the juvenile court ordered the Department to interview the paternal grandfather and uncle regarding ICWA. The paternal grandparents reported father's family did not have Indian heritage, both in an interview with the dependency investigator and when questioned by the court at a subsequent hearing. Mother does not challenge the court's ICWA finding with respect to father's family.

On September 7, 2022, the Department submitted a new report in advance of the section 366.26 hearing. The report detailed the dependency investigator's efforts to contact mother and to develop relevant information regarding A.C.'s possible Indian heritage. The Department maintained mother and the maternal grandmother had failed to provide the "additional information" needed to submit an ICWA inquiry and recommended the court find insufficient information to believe A.C. was an Indian child. The report did not indicate that the Department had contacted the Bureau of Indian Affairs or State Department of Social Services for assistance identifying the maternal great-grandfather's possible tribe.

Mother appeared telephonically for the section 366.26 hearing. Her counsel argued she had a beneficial relationship with A.C. worth preserving and she had consistently visited with the child, except when mother was in a resident drug treatment program and during a period when she had COVID-19. Mother's counsel did not address the Department's ICWA recommendation.

The juvenile court found there was no reason to believe A.C. was an Indian child, explaining: "On May 11th of 2022, the mother continues to deny that she has any American Indian heritage, but a few weeks later on May 23rd, she filed an updated [ICWA-]020 form on the day of the [section] 388 petition hearing indicating that [the] maternal grandmother and her great-grandfather [*sic*] on her father's side were registered members of a tribe. [¶] The Department has followed up with her relatives as documented in the most recent [section 366.]26 report. The Department contacted the mother and the maternal grandmother and left multiple messages in July and received no response. The

7

court notes that the maternal great grandmother has recently passed, and the Department cannot follow-up with her. [¶] So we have no response from the mother's side of the family with regard to her American Indian heritage.  However, throughout the life of this case, starting from the detention, the mother did file her initial [ICWA-]020 form which indicated that she has none.  Until May 11th, she continued to deny American Indian heritage."

Thus, the court found the Department had made "diligent efforts in following up with the case participants and extended family members," and there was "no sufficient reason to believe that there is Indian ancestry in this case."  The court denied mother's request to make an exception to the preferred plan for adoption and terminated mother's parental rights.

## DISCUSSION

Mother argues the Department failed to satisfy its statutory duty under ICWA to make further inquiry regarding A.C.'s possible Indian heritage after she informed the court she had discovered information indicating her great-grandmother and grandfather (A.C.'s great-great-grandmother and great-grandfather) on mother's father's side were registered members of a federally recognized Indian tribe.  (See § 224.2, subd. (d)(3).)  Specifically, mother maintains the inquiry was inadequate because the Department (1) failed to interview maternal relatives about the family's Indian heritage; and (2) failed to contact the Bureau of Indian Affairs and State Department of Social Services for assistance identifying the tribes in which A.C. might be eligible for membership.  Due to these shortcomings, mother contends the juvenile court erred in prematurely finding ICWA did not apply to this proceeding.  We agree the inquiry

8

was deficient to the extent the Department failed to contact relevant government agencies for assistance in determining the validity of mother's ICWA claim.

"Where, as here, the juvenile court finds ICWA does not apply to a child, '[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children *and that social workers had fulfilled their duty of inquiry.*' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 688 (*J.S.*), italics added; accord *In re D.S.* (2020) 46 Cal.App.5th 1041, 1050 ["[t]he juvenile court may . . . make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered"]; see § 224.2, subd. (i)(2).) " '[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*).)

"ICWA reflects a congressional determination to protect American Indian children and to promote the stability and security of Indian tribes and families." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 (*Josiah T.*), citing 25 U.S.C. § 1902.) To that end, ICWA establishes unique standards for the removal and placement of Indian children, including special procedural rules to determine whether an Indian child is involved in the proceeding. (See 25 U.S.C. § 1901 et seq.)

9

The juvenile court and county welfare agency have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); *D.F., supra,* 55 Cal.App.5th at p. 566.) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.,* at p. 566; *Josiah T., supra,* 71 Cal.App.5th at p. 402.) The agency must document its investigation and provide a detailed description of all inquiries undertaken. (Rule 5.481(a)(5).)

The duty to make an initial inquiry is triggered once a child is removed from parental custody. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 998.) If a child is placed into the temporary custody of a county welfare agency, the agency must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, at each participant's first appearance in the dependency proceeding, the court must ask whether the participant knows or has reason to know the child is an Indian child. (*Id*., subd. (c).)

The court and the agency must make "further inquiry" if either has "reason to believe" an Indian child is involved. (§ 224.2, subd. (e).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes,

10

but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know [the child is an Indian child]." (*Id.*, subd. (e)(1).) Those grounds include, among other things, when "[a]ny participant in the proceeding . . . informs the court that [he or she] has discovered information indicating that the child is an Indian child." (*Id.*, subd. (d)(3).)

Our state law establishes steps the court and the agency must take in "further inquiry," including, but not limited to, interviewing parents and extended family members and notifying the Bureau of Indian Affairs and any tribes "that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)–(C); see also rule 5.481(a)(4).) We are concerned here with the statutory mandate to notify the Bureau of Indian Affairs.

"When there is reason to believe the child is an Indian child, further inquiry is necessary to help the court, social worker, or probation officer determine whether there is reason to know a child is an Indian child." (§ 224.2, subd. (e)(2).) To that end, our state law directs the county welfare agency to "[c]ontact[ ] the Bureau of Indian Affairs and the State Department of Social Services *for assistance in identifying the names and contact information of the tribes* in which the child may be a member, or eligible for membership in" and for assistance in "contacting the tribes and any other person that may reasonably be expected to have information regarding

11

the child's membership status or eligibility."  (*Id.*, subd. (e)(2)(B), italics added.)[4]

Consistent with the statute's plain language, our courts have construed this directive to require the county welfare agency "to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe *or, if the tribe is unknown*, to the [Bureau of Indian Affairs]."  (*In re Louis S.* (2004) 117 Cal.App.4th 622, 630, italics added; *In re A.W.* (2019) 38 Cal.App.5th 655, 663 ["if the court 'knows or has reason to know that an Indian child is involved,' notice of the pending proceeding and the right to intervene must be sent to the tribe or the [Bureau of Indian Affairs] if the tribal affiliation is not known"]; accord *Josiah T., supra,* 71 Cal.App.5th at p. 405.)  This interpretation accords with federal law.  (See 25 U.S.C. § 1912(a).)[5]

---

[4]	Rule 5.481(a)(4) similarly provides:  "If the social worker, probation officer, licensed adoption agency, adoption service provider, investigator, or petitioner knows or has reason to know or believe that an Indian child is or may be involved, that person or entity must make further inquiry as soon as practicable by: . . . [c]ontacting the Bureau of Indian Affairs and the California Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership."

[5]	"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.  *If the identity or location of the parent or Indian custodian and the tribe cannot*

12

The Department does not dispute the duty of further inquiry was triggered when mother notified the juvenile court that she had discovered information indicating her great-grandmother and grandfather on her father's side were registered members of an Indian tribe. (See § 224.2, subd. (d)(3); cf. *In re J.L.* (2017) 10 Cal.App.5th 913, 923 [no further inquiry duty where the mother "did not know whether she had American Indian heritage of any kind, did not know the names of the relatives who might have had such heritage, and had heard only a 'general or vague' reference to possible heritage"].) The juvenile court also plainly found the duty had been triggered, as it ordered the Department to reinterview mother's extended relatives regarding the family's possible tribal membership and to provide required notices to the tribes consistent with the mandates of section 224.2, subdivision (e)(2).

Notwithstanding the court's order, there is no record of the Department "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership."

_____

*be determined, such notice shall be given to the Secretary [of the Interior] in like manner,* who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary." (25 U.S.C. § 1912(a), italics added; see also 25 U.S.C. § 1a [Secretary of Interior authorized to delegate duties to Commissioner of Indian Affairs, and Commissioner is authorized to delegate to any assistant commissioner or officer of the Bureau of Indian Affairs].)

13

(§ 224.2, subd. (e)(2)(B).)  While the Department's reports document repeated attempts to reinterview mother and her relatives, those reports are entirely silent regarding any other efforts to identify or notify the tribes that might have information regarding A.C.'s possible eligibility for membership.  The respondent's brief is similarly silent concerning this latter aspect of the further inquiry requirement, noting only that mother's most recent ICWA-020 form listed the name of her paternal relatives' tribe as "Unknown."  But the fact that the family's possible tribal affiliations were unknown was precisely what made the need to contact the Bureau of Indian Affairs "for assistance in identifying the names and contact information of the tribes" so critical.  (*Ibid.*)  Because the Department did not fulfill its statutorily mandated duty to contact the Bureau of Indian Affairs, the juvenile court's ICWA finding was premature and erroneous.  (See *Josiah T., supra,* 71 Cal.App.5th at p. 408 ["the court may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [county welfare agency] inquiry that is not proper, adequate, or demonstrative of due diligence"].)

As the Department does not address the failure to contact the relevant agencies, it also does not attempt to show the error was harmless.  For our part, we cannot independently find harmless error in this case.  According to mother's counsel, mother had information indicating her paternal grandfather was a registered member of an Indian tribe and he received attendant benefits.  Whether this is true or not, we can reasonably assume the Bureau of Indian Affairs might have been able to verify the claim if the Department had contacted the agency with mother's grandfather's name and other information mother provided.

14

(See, e.g., 25 U.S.C. § 13 ["The Bureau of Indian Affairs, under the supervision of the Secretary of the Interior, shall direct, supervise, and expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians throughout the United States."]; *Morton v. Ruiz* (1974) 415 U.S. 199, 204, 211–212 [evidence of family's close economic and social ties to tribe required invalidation of Bureau of Indian Affairs rule which denied federal benefits to Indian family who lived off of the tribal reservation]; cf. *J.S., supra,* 62 Cal.App.5th at pp. 684, 689–690 [absent information establishing "specific geographic area of possible ancestry origin," contacting Bureau of Indian Affairs would have been "idle act" where grandmother reported her "family was 'of Mexican descent' " and only information regarding possible Indian heritage was ancestry.com result indicating " 'approximately 54% Native American lineage/heritage' " covering " 'ethnic origins' from North America and South America, '[s]tretching from Alaska to the tip of Argentina' "].)

Accordingly, we must conditionally affirm the order terminating parental rights and remand with directions to the juvenile court to order the Department to perform an investigation consistent with the law and this decision, including contacting the Bureau of Indian Affairs for assistance in

15

identifying the tribe or tribes in which A.C. may be eligible for membership.[6]

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally affirmed. The case is remanded to the juvenile court to order the Department to comply immediately with the inquiry provisions of Welfare and Institutions Code section 224.2. After ensuring the Department has complied with the inquiry, and, if applicable, notice provisions of ICWA and related California law, the juvenile court shall determine whether ICWA applies. If the court determines ICWA does not apply, the order terminating parental rights shall remain in effect.

---

[6] While remanding this matter to the juvenile court will allow the Department to make another attempt to interview mother and the available maternal relatives, there should be no confusion about mother's obligation to cooperate with the Department's investigative efforts. As we recently explained, "[a]lthough it is well established that the duty to develop information bearing on whether a child is an Indian child 'rests with the court and the Department, not the parents or members of the parents' families' [citation], in most cases the court and [the Department] cannot satisfy this duty without the participation of the parents. While we believe it reasonable in many cases to require [the Department] to follow up on leads provided by the parents, we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.)

16

If the court determines ICWA does apply, it shall vacate its order terminating parental rights and proceed consistent with ICWA and related state law.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.

17